IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN BEREZIN,<br><br>    **Plaintiff,**<br><br>- against -<br><br>FCA US LLC and SH AUTO, INC. d/b/a WESTBORO CHRYSLER DODGE JEEP,<br><br>    **Defendant.** | Civil Case Number:<br>1:21-cv-10852-FDS<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff Ivan Berezin (hereinafter, "Plaintiff"), a Massachusetts resident, brings this second amended complaint through the undersigned attorneys, against Defendants FCA US LLC and SH AUTO, INC. d/b/a WESTBORO CHRYSLER DODGE JEEP, (hereinafter "Defendants"), based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

1. This is a case brought after the Plaintiff spent over $100,000 to purchase a brand new, custom ordered Jeep Grand Cherokee Trailhawk from the Defendants. After spending all this money and waiting months for his brand-new custom vehicle, Plaintiff was finally able to take delivery of the vehicle when it arrived from FCA to the Westboro dealership. However, and unbeknownst to the Plaintiff, the vehicle had been driven and had sustained extensive damage, which the Defendants did not disclose to the Plaintiff - instead actively covering up that damage so that the Plaintiff would not realize that his new vehicle had been used and damaged in such a manner.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 2201. The Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

4. Plaintiff brings this action seeking redress for Defendants' actions for defrauding him, for negligence and for breach of contract. Plaintiff also asserts a claim under the Magnuson Moss Warranty Act against Defendant Westboro.

5. Plaintiff is seeking actual damages, statutory damages, punitive damages along with attorneys' fees and costs.

## PARTIES

6. Plaintiff, Ivan Berezin (hereinafter the "Plaintiff) is a natural person who at all relevant times was a resident of Framingham, Massachusetts.

7. Defendant, FCA US, LLC (hereinafter "FCA") is a limited liability company with a principle place of business located in Auburn Hills, Michigan. FCA is the North American arm of Fiat Chrysler Automobiles, and manufactures a range of vehicles under its Fiat and Chrysler brands, including Jeep, Ram and Dodge.

8. Defendant, SH Auto, Inc. d/b/a Westboro Chrysler Dodge Jeep (hereinafter "Westboro") is a licensed new and used vehicle dealership in Westboro, Massachusetts.

## ALLEGATIONS OF FACT

9. On or about June 29, 2020, Plaintiff purchased a 2020 Jeep Grand Cherokee (hereafter "Vehicle"), factory ordered from Defendant Westboro, a manufacturer authorized agent

of Defendant FCA. The vehicle was purchased for $101,410 providing a $20,000.00 non-refundable deposit. A copy of the motor vehicle purchase agreement is attached as Exhibit A.

10. Defendant FCA, through its authorized agent Westboro, represented to Plaintiff that this would be a brand new vehicle built especially for Plaintiff.

11. Defendant Westboro represented to Plaintiff that the vehicle would be delivered in 8-12 weeks.

12. Sometime in mid-July, Plaintiff was notified that the vehicle would be completed for shipment on either July 30 or July 31.

13. In the first week of August, Plaintiff was informed by Defendant Westboro that the vehicle had been shipped from the first factory to the second for customized additions.

14. Subsequently there was another 4- 6 week delay in the vehicle's delivery.  Plaintiff was told by Defendant Westboro that they did not know the reason for the significant delay, but they assured him that everything was fine.

15. When the vehicle finally arrived at Westboro's location they notified Plaintiff.

16. When Plaintiff arrived to pick up this ostensibly new and unused vehicle, the vehicle had 32 miles on it that were unaccounted for.

17. However, the vehicle's documentation listed the vehicle's current odometer reading at 10 miles.

18. The vehicle was also unusually dirty for a brand-new car.

19. No question and answer stickers were on the vehicle, or mentioned in the documentation supporting the purchase of the vehicle.

20. Defendant Westboro told Plaintiff that this was normal, despite this being the first vehicle of this make and model that they had ever sold.

21. It appears the vehicle had been used while still in Defendant FCA's possession.

22. Shortly after taking possession of the vehicle Plaintiff dropped the vehicle off at a body shop for examination and to have some custom work done.

23. Two days later the body shop informed Plaintiff that 6 chips were found on the vehicle. The body shop took pictures of the chips and sent them to Plaintiff's wife.

24. Plaintiff's wife then printed the photos and went to Westboro's dealership and presented them to a sales representative named John. John stated that the dealership would discuss the matter internally and get back to them.

25. On or about October 21, 2020, the auto body shop was scheduled to do some work on the vehicle. They called Plaintiff to inform him of additional damage they found on the vehicle.

26. Plaintiff's wife went to the body shop and was given photos of the damage and a repair estimate for $6,430.00.

27. Some of the issues found with the vehicle were (1) a misaligned front bumper, (2) multiple panels on the vehicle had been repainted, (3) the bumper was put back on with grey cement, (4) the panels and bumpers had scratches and chips in them, and (5) there was paint missing and burn marks on multiple locations of the vehicle. Further the body shop stated that the vehicle may have been in an accident.

28. On or about October 22, 2020, Plaintiff's wife went to the dealership and spoke to a sales manager who stated that he had never seen a new vehicle with so many miles on it. When the General Manager came to speak with her, Plaintiff's wife provided an invoice

outlining the work that needed to be done on the vehicle. She also provided photographs of all the damage to the vehicle. She was told that someone from the dealership would take pictures of the vehicle.

29. The next day Westboro's representative Justin Drake photographed the vehicle. A video conference was done between all the parties present and the body shop's owner so that he could explain all the issues with the vehicle.

30. After photographing the vehicle, Mr. Drake told Plaintiffs wife that this was all a formality and that they would be paying out for the damage to the vehicle.

31. Shortly thereafter, another body shop called Clay Auto Body gave Plaintiff an estimate for the work the vehicle needed. The total cost for repairs was $8,690.05.

32. On November 12, 2020, Plaintiff sent Defendants, via certified mail, a written demand for redress from Defendants for violation of their consumer rights.

33. Defendants have in bad faith refused to make any written tender of settlement to Plaintiff.

<u>**Count I**</u>
<u>**Fraud or Deceit in the Sale of Goods (M.G.L. c. 231, § 85J)**</u>
<u>**(As Against Defendant FCA)**</u>

34. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

35. On June 29, 2020, Defendant FCA – through its authorized agent Westboro – sold the Plaintiff a brand new custom vehicle, representing to Plaintiff prior to the sale that the vehicle he was getting from FCA and Westboro would be brand new.

36. Defendant knew, or through a modicum of diligence could have discovered, that its representations about the vehicle's condition were false.

37. Defendant's misrepresentations about the vehicle's safety and condition were made with the intent to induce the Plaintiff into purchasing the vehicle.

38. The Plaintiff was reasonably induced to the vehicle purchase by Defendant's misrepresentations.

39. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle would arrive used and damaged.

40. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle had damage to it that the Defendant would then try to covertly cover up.

41. As direct and proximate result of Defendant's misrepresentations, Plaintiff was deprived of the benefit of the bargained purchase.

42. On November 12, 2020 Plaintiff sent Defendant, via certified mail, a written demand for redress from Defendants for violation of their consumer rights.

43. Defendant has in bad faith refused to make any written tender of settlement to Plaintiff.

## Count II
## Fraud or Deceit in the Sale of Goods (M.G.L. c. 231, § 85J)
## (As Against Defendant Westboro)

44. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

45. On June 29, 2020, Westboro sold the Plaintiff a brand new custom vehicle, representing to Plaintiff prior to the sale that the vehicle he was getting from FCA and Westboro would be brand new.

46. Defendant knew, or through a modicum of diligence could have discovered, that its representations about the vehicle's condition were false.

47. Defendant's misrepresentations about the vehicle's safety and condition were made with the intent to induce the Plaintiff into purchasing the vehicle.

48. The Plaintiff was reasonably induced to the vehicle purchase by Defendant's misrepresentations.

49. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle would arrive used and damaged.

50. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle had damage to it that the Defendant would then try to covertly cover up.

51. As direct and proximate result of Defendant's misrepresentations, Plaintiff was deprived of the benefit of the bargained purchase.

52. On November 12, 2020 Plaintiff sent Defendant, via certified mail, a written demand for redress from Defendants pursuant for violation of their consumer rights.

53. Defendant has in bad faith refused to make any written tender of settlement to Plaintiff.

### Count III
### Breach of Contract
### (As Against Defendant Westboro)

54. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

55. On or about June 29, 2020, the Defendant entered, executed and delivered to Plaintiff a Purchase Agreement (hereinafter the "Agreement") in which the Defendant agreed to sell Plaintiff a brand new, unused, Jeep Grand Cherokee Trailhawk for the price of $101,410. providing a $20,000.00 non-refundable deposit. A copy of the motor vehicle purchase agreement is attached as Exhibit A.

56. Plaintiff performed all of his obligations under the Agreement.

57. Defendant breached the Agreement, by delivering a vehicle to the Plaintiff that was used and damaged.

58. By failing to provide a properly working safe and brand new vehicle, Defendant is in breach of the agreement.

59. As a result, Plaintiff has suffered damages.

### Count IV
### Unfair and Deceptive Practices in Trade or Commerce (G.L. c. 93A, § 9)
### (As Against Defendant FCA)

60. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

61. At all relevant times Defendant was engaged in trade or commerce.

62. On June 29, 2020, Defendant induced the Plaintiff to pay over $100,000 for the purchase of a Jeep Grand Cherokee Trailhawk, with the promise that the vehicle would be brand-new, unused, and custom built.

63. The vehicle was then damaged in the Defendant's possession prior to delivery to the Plaintiff.

64. Rather than disclose the damage to Plaintiff's brand-new vehicle to the Plaintiff, the Defendant then attempted to cover up those damages, repairing those damages in a shoddy manner in the hopes that this damage would go unnoticed.

65. Pursuant to 940 Code Mass. Regs. § 3.16, any act or practice is a violation of G.L. c. 93A, § 2 if:

    a. Any person or other legal entity fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or

    b. It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or

    c. It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2.

66. Defendant's conduct as described herein violated G.L. c. 93A, § 2 and the foregoing provisions of 940 Code Mass. Regs. § 3.16 by (1) purportedly selling the Plaintiff a brand-new, unused vehicle, which in fact was used and damaged, (2) covering up the damage to the Plaintiff's vehicle, and trying to pass it off as undamaged and brand-new, and (3) failing to disclose that the vehicle was damaged, had been in an accident, and that the Defendant had attempted to repair those damages.

67. The aforesaid unlawful conduct of Defendant was willful and knowing in nature.

68. On November 12, 2020 Plaintiff sent Defendant, via certified mail, a written demand for redress from Defendant pursuant for violation of their consumer rights.

69. Defendant has in bad faith refused to make any written tender of settlement to Plaintiff.

### Count V
### Unfair and Deceptive Practices in Trade or Commerce (G.L. c. 93A, § 9)
### (As Against Defendant Westboro)

70. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

71. At all relevant times Defendant was engaged in trade or commerce.

72. On June 29, 2020, Defendant induced the Plaintiff to pay over $100,000 for the purchase of a Jeep Grand Cherokee Trailhawk, with the promise that the vehicle would be brand-new, unused, and custom built.

73. The vehicle was then damaged prior to delivery of the vehicle by Westboro to the Plaintiff.

74. Westboro was aware that the vehicle had been used, both by the unusually high and unexplained mileage on this vehicle and by the damage to the vehicle.

75. Rather than disclose the damage to Plaintiff's brand-new vehicle to the Plaintiff, the Defendant failed to mention anything to the Plaintiff, in the hopes that it could complete the sale of the vehicle before anything amiss would be noticed.

76. Pursuant to 940 Code Mass. Regs. § 3.16, any act or practice is a violation of G.L. c. 93A, § 2 if:

    a. Any person or other legal entity fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or

    b. It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or

    c. It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2.

77. Defendant's conduct as described herein violated G.L. c. 93A, § 2 and the foregoing provisions of 940 Code Mass. Regs. § 3.16 by (1) purportedly selling the Plaintiff a brand-new, unused vehicle, which in fact was used and damaged, (2) covering up the damage to the Plaintiff's vehicle, and trying to pass it off as undamaged and brand-new, and (3) failing to disclose that the vehicle was damaged, had been in an accident, and that someone had attempted to repair those damages.

78. The aforesaid unlawful conduct of Defendant was willful and knowing in nature.

79. On November 12, 2020 Plaintiff sent Defendant, via certified mail, a written demand for redress from Defendant pursuant for violation of their consumer rights.

80. Defendant has in bad faith refused to make any written tender of settlement to Plaintiff.

### Count VI
### Negligence
### (As Against FCA)

81. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

82. Defendant FCA, through its authorized agent Westboro, sold a vehicle to the Plaintiff.

83. Defendants were under a duty to act reasonably when selling the vehicle to Plaintiff.

84. Under the same or similar circumstances, a reasonable, prudent and careful person would have made Plaintiff aware of the issues and defects with the vehicle.

85. Under the same or similar circumstances, a reasonable, prudent and careful person would not have damaged the vehicle.

86. Under the same or similar circumstances, a reasonable, prudent and careful person would have replaced the vehicle after damaging and using it.

87. Defendant breached its duty of care to Plaintiff (1) by damaging the vehicle, (2) by failing to notify Plaintiff of the damages to the vehicle, (3) and by repairing the vehicle in a shoddy manner.

88. As a direct and proximate result of defendants actions Plaintiff has suffered damages. Plaintiff has suffered emotional distress, including anger, annoyance, frustration and lost time, all incurred in dealing with the Defendant's negligence, deceit and fraud.

### Count VII
### Negligence
### (As Against Westboro)

89. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

90. Defendant Westboro, sold a vehicle to the Plaintiff, to be built by Defendant FCA.

91. Defendants were under a duty to act reasonably when selling the vehicle to Plaintiff.

92. When the vehicle arrived to Westboro, Westboro was aware – or should have been aware – of the damage and use to the vehicle, yet said nothing to the Plaintiff.

93. Under the same or similar circumstances, a reasonable, prudent and careful person would have made Plaintiff aware of the issues and defects with the vehicle.

94. Under the same or similar circumstances, a reasonable, prudent and careful person would not have sold such a vehicle to a customer and would instead have replaced the vehicle.

95. Defendant breached its duty of care to Plaintiff by failing to notify Plaintiff of the damages to the vehicle and by failing to repair the damage to the vehicle.

96. As a direct and proximate result of defendants actions Plaintiff has suffered damages. Plaintiff has suffered emotional distress, including anger, annoyance, frustration and lost time, all incurred in dealing with the Defendant's negligence, deceit and fraud.

## Count VIII
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. 2301, et seq.)**
**(As Against Westboro)**

97. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

98. Plaintiff's' vehicle is a "consumer product" within the meaning of 15 U.S.C. § 2301.

99. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 2301.

100. Defendant is a "supplier" of the consumer product to consumer and "warrantor" within the meaning of 15 U.S.C. § 2301.

101. Defendant made written and implied warranties regarding the vehicle to Plaintiff and within the meaning of 15 U.S.C. § 2301. Specifically, Defendant claimed that it was selling a brand-new unused custom vehicle to Plaintiff that had been built especially for him

102. Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. by failing to comply with the written and implied warranties they made to Plaintiff. Specifically, Defendant sold the Plaintiff a vehicle that had been used, had been in an accident, and which was damaged and then repaired in a shoddy manner.

103. Plaintiff has sustained injuries and damages as a result of Defendants' violation of their written and/or implied warranties.

## Count IX
**Fraud**
**(As Against Defendant FCA)**

104. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

105. On June 29, 2020, Defendant FCA – through its authorized agent Westboro – sold the Plaintiff a brand new custom vehicle, representing to Plaintiff prior to the sale that the vehicle he was getting from FCA and Westboro would be brand new.

106. On October 15, 2020, FCA delivered that vehicle to Westboro.

107. FCA knew, at the time that it delivered the vehicle to Westboro for ultimate delivery to the Plaintiff, that the vehicle had been used and damaged.

108. FCA nevertheless consciously chose not to say anything about this to the Plaintiff, instead hoping that the Plaintiff would not realize that his brand new custom vehicle had been damaged and used.

109. Defendant knew, or through a modicum of diligence could have discovered, that its representations about the vehicle's condition were false.

110. Defendant's misrepresentations and omissions about the vehicle's safety and condition were made with the intent to induce the Plaintiff into purchasing the vehicle.

111. The Plaintiff was reasonably induced to the vehicle purchase by Defendant's misrepresentations.

112. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle would arrive used and damaged.

113. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle had damage to it that the Defendant would then try to covertly cover up.

114. As direct and proximate result of Defendant's misrepresentations, Plaintiff was deprived of the benefit of the bargained purchase and suffered damages.

### Count X
### Fraud
### (As Against Defendant Westboro)

115. The allegations of paragraphs 1-33 are incorporated herein as if fully set forth.

116. On June 29, 2020, Westboro sold the Plaintiff a brand new custom vehicle, representing to Plaintiff prior to the sale that the vehicle he was getting from FCA and Westboro would be brand new.

117. On October 15, 2020, FCA delivered that vehicle to Westboro.

118. The vehicle was then picked up from Westboro by Plaintiff.

119. Westboro knew, at the time that it delivered the vehicle to Plaintiff, that the vehicle had been used and damaged.

120. Westboro nevertheless consciously chose not to say anything about this to the Plaintiff, instead hoping that the Plaintiff would not realize that his brand new custom vehicle had been damaged and used.

121. Defendant knew, or through a modicum of diligence could have discovered, that its representations about the vehicle's condition were false.

122. Defendant's misrepresentations about the vehicle's safety and condition were made with the intent to induce the Plaintiff into purchasing the vehicle.

123. The Plaintiff was reasonably induced to the vehicle purchase by Defendant's misrepresentations.

124. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle would arrive used and damaged.

125. The Plaintiff would not have spent over $100,000 on this vehicle if he had known that the vehicle had damage to it that the Defendant would then try to covertly cover up.

126. As direct and proximate result of Defendant's misrepresentations, Plaintiff was deprived of the benefit of the bargained purchase and has suffered damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a)   Awarding Plaintiff statutory damages;

(b)   Awarding Plaintiff actual damages;

(c)   Awarding Plaintiff punitive damages;

(d)   Awarding Plaintiff, a full refund of the vehicle including cost for documentary preparation; or alternatively the cost of necessary repairs.

(e)   Awarding Plaintiff all incidental and directly foreseeable consequential damages, including but not limited to title, tax, registration, and inspection costs, insurance, and expenses for re-delivery and compensation for lost time.

(f)   Tripling or doubling of actual damages. G.L. c. 93A, § 9;

(g)   Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(h)   Awarding pre-judgment interest and post-judgment interest; and

(i)   Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: November 5, 2021

By:   /s/ Emmanuel Mukendi
Emmanuel Mukendi Esq.
BBO:685863
58 Walnut Street Suite 4
Somerville Ma 02143
617-645-1997

/s/ Yitzchak Zelman

Yitzchak Zelman, Esq.
MARCUS ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282

Email: yzelman@marcuszelman.com
*Admitted Pro Hac Vice*
*Attorneys for Plaintiff*