UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IVAN BEREZIN,<br><br>        Plaintiff,<br><br>    v.<br><br>FCA US, LLC, and SH AUTO, INC., d/b/a WESTBORO CHRYSLER DODGE JEEP,<br><br>        Defendants. | Civil Action No.<br>21-10852-FDS |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, C.J.**

    This is a dispute arising out of the purchase of an automobile. In June 2020, plaintiff Ivan Berezin ordered a Jeep Grand Cherokee from defendant SH Auto, Inc., d/b/a Westboro Chrysler Dodge Jeep, a dealership in Westboro, Massachusetts. The vehicle was factory-ordered, meaning that Berezin completed an order form at the Westboro dealership for a vehicle to be manufactured according to his specifications. The dealership then submitted the order to the manufacturer, defendant FCA US, LLC, in Auburn Hills, Michigan.

    When Berezin received the vehicle, it allegedly bore signs of having been previously driven and substantially damaged. He sued Westboro and FCA in state court, alleging claims of fraud, negligent misrepresentation, breach of contract, and violations of state consumer-protection law. After he amended the complaint to include a federal cause of action under the Magnuson-Moss Warranty Act, defendants removed the action to federal court.

    FCA has moved to dismiss Counts 1, 4, 6, and 9 of the second amended complaint for failure to state a claim upon which relief can be granted. For the following reasons, that motion

will be granted as to Count 1, and otherwise denied.

I.     **Factual and Procedural Background**

   A.     **Factual Background**

Unless otherwise noted, the following facts are drawn from the second amended complaint and documents referred to or attached to that complaint.[1]

Ivan Berezin is a resident of Framingham, Massachusetts. (SAC ¶ 6).

SH Auto, Inc., is a licensed car dealership in Westboro, Massachusetts, that does business under the name Westboro Chrysler Dodge Jeep. (*Id.* ¶ 8).

At the relevant time, FCA US, LLC, was the North American arm of Fiat Chrysler Automobiles N.V. (*Id.* ¶ 7). FCA manufactured vehicles under a variety of brands, including Jeep. (*Id.*).

In June 2020, Berezin purchased a customized 2020 Jeep Grand Cherokee Trailhawk (or Trackhawk) from Westboro. (*Id.* ¶¶ 1, 9).[2] The sales price was $101,410. (*Id.*). Berezin paid a $20,000 non-refundable deposit. (*Id.*). The purchase agreement provided that the vehicle was a "factory order" and that Westboro would return the deposit if the vehicle could not be manufactured. (*Id.* Ex. A). According to the complaint, Westboro told him that the vehicle would be delivered in eight to twelve weeks. (*Id.* ¶ 11).

FCA was not a party to the agreement, and nothing in the purchase agreement indicates any representations or commitments by FCA. (*Id.* Ex. A). The complaint, however, alleges that

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[2] Although the complaint alleges that the vehicle was a "Trailhawk" model, the purchase agreement indicates that it was a "Trackhawk." The difference is not material to the present dispute.

Westboro was an "authorized agent" of FCA.  (*Id.* ¶ 10).  It contains no further allegations as to the factual basis of that alleged agency relationship.

Berezin was allegedly notified by the dealer at the time of sale that the vehicle would be ready for shipment at the end of July.  (*Id.* ¶ 12).  At the beginning of August, however, Westboro informed him that the vehicle had been shipped from the original factory to a second facility for "customized additions."  (*Id.* ¶ 13).  The complaint alleges that another four-to-six-week delay followed that Westboro could not explain, although it assured Berezin that "everything was fine" with his order.  (*Id.* ¶ 14).

Westboro notified Berezin when the vehicle arrived at the dealership.  (*Id.* ¶ 15).  When he arrived to pick it up, he noticed that it was "unusually dirty for a brand new car."  (*Id.* ¶ 18).  Documentation accompanying the vehicle allegedly listed the vehicle's odometer mileage as 10 miles.  (*Id.* ¶ 17).  However, it appears that the odometer reading was 42 miles; according to the complaint, the vehicle had "32 miles on it that were unaccounted for."  (*Id.* ¶16).[3]

Westboro allegedly told Berezin that all of this was normal, even though this was the first Jeep Grand Cherokee Trailhawk the dealership had sold.  (*Id.* ¶ 20).  He nonetheless concluded that it "appear[ed] the vehicle had been used while in defendant FCA's possession."  (*Id.* ¶ 21).

Shortly thereafter, Berezin took the vehicle to a body shop for an inspection and to have some custom work performed.  (*Id.* ¶ 22).  The body shop informed him the vehicle's paint had been chipped in six places.  (*Id.* ¶ 23).  Berezin's wife printed photographs of the damage and presented them to a Westboro sales representative.  (*Id.* ¶ 24).  The sales representative told her

---

[3] The complaint also alleges that "no question or answer stickers were on the vehicle, or mentioned in the documentation supporting the purchase of the vehicle."  (SAC ¶ 19).  It is unclear whether that is a reference to the so-called "Monroney Sticker," required by federal law, that mandates disclosure of equipment, pricing, and fuel efficiency information.  15 U.S.C. §§ 1231-1233.

that Westboro would discuss the matter internally and then respond. (*Id.*).

In October 2020, the body shop allegedly found additional damage to the vehicle. (*Id.* ¶ 25). According to the complaint, the body shop noted (1) the front bumper was misaligned; (2) multiple panels had been repainted; (3) the bumper "was put back on with grey cement"; (4) the panels and bumpers had scratches and chips in them; and (5) paint was missing and there were burn marks in multiple locations. (*Id.* ¶ 27). The body shop stated that the vehicle "may have been in an accident." (*Id.*). It provided Berezin's wife with photographs of the damage and a repair estimate of $6,430. (*Id.* ¶ 26).

Berezin's wife returned to Westboro and spoke to a sales manager, who allegedly stated that he had never seen a new vehicle with "so many miles on it." (*Id.* ¶ 28). She then met the General Manager and provided him the photographs and repair estimate provided by the body shop. (*Id.*).

The next day, a representative of Westboro photographed the vehicle. (*Id.* ¶ 29). The representative allegedly said that "this was all a formality" and that Westboro "would be paying out" for the damage. (*Id.* ¶ 30). According to the complaint, a video conference was then conducted between Berezin, Westboro, and the body shop. (*Id.* ¶ 29). During that conference, the owner of the body shop explained the issues with the vehicle that his shop had discovered. (*Id.*).

Berezin then took the vehicle to a second body shop. (*Id.* ¶ 31). That shop estimated the total repair cost at $8,690.05. (*Id.*).

In November 2020, Berezin sent Westboro and FCA a written demand letter under Mass. Gen. Laws ch. 93A. (*Id.* ¶ 32). Neither defendant tendered a settlement offer. (*Id.* ¶ 33).

**B.    Procedural Background**

In January 2021, Berezin sued Westboro and FCA in state court alleging claims of fraud,

negligent misrepresentation, breach of contract, and violations of state consumer protection law. He amended the complaint to include a federal cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Shortly thereafter, defendants removed the action to federal court. Berezin then filed a second amended complaint.

The second amended complaint alleges ten claims: Counts 1 and 2 allege fraud in the sale of goods in violation of Mass. Gen. Laws ch. 231, § 85J against FCA and Westboro, respectively. Count 3 alleges breach of contract against Westboro. Counts 4 and 5 allege violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, against FCA and Westboro. Counts 6 and 7 allege claims of negligent misrepresentation against FCA and Westboro.[4] Count 8 alleges violation of the Magnuson-Moss Warranty Act against Westboro. Counts 9 and 10 allege common-law fraud against both FCA and Westboro.

FCA has moved to dismiss Counts 1, 4, 6, and 9 for failure to state a claim upon which relief can be granted.

## II. **Legal Standard**

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally*

---

[4] Counts 6 and 7 are titled "negligence" but the claims allege, in substance, negligent misrepresentation.

*Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.     Analysis

FCA has moved to dismiss the claims against it on three grounds. First, it contends that the complaint fails to allege fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b). Second, it contends that the complaint fails to allege facts that plausibly establish a purchaser-seller relationship required to state claims under Mass. Gen. Laws chs. 231, § 85J, and 93A. Finally, it contends that the economic-loss doctrine bars the claim of negligent misrepresentation.

Each argument will be addressed in turn.

#### A.     Fraud-Based Claims

Ordinarily, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For that reason, "[g]reat specificity is ordinarily not required to survive a Rule 12(b)(6) motion." *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992). However, under Fed. R. Civ. P. 9(b), in cases "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The basic purposes of that requirement are (1) to give the defendants notice and enable them to prepare a meaningful response; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations. *See In re Lupron Mktg. & Sales Pracs. Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003) (quoting *New*

6

*England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)); *see also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980).

Under the heightened pleading requirement of Fed. R. Civ. P. 9(b), a complaint alleging fraud must state "the who, what, where, and when" of the alleged deception. *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016) (quoting *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)). The requirement applies both to general claims of fraud and also to "associated claims where the core allegations effectively charge fraud." *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009).

The complaint alleges fraud under two related, yet distinct, theories. The first is fraud in the inducement: it alleges that when plaintiff originally purchased the vehicle, FCA and Westboro falsely represented to him that he was buying a vehicle that would not arrive used and damaged, thereby inducing him to pay the vehicle's full purchase price. The second is fraud by omission: it alleges that at the time of delivery, FCA and Westboro knew the vehicle had been used and damaged but failed to disclose that information.

### 1. Fraud in the Inducement

Counts 1 and 2 allege fraud or deceit in the sale of goods under Mass. Gen. Laws ch. 231, § 85J as to FCA and Westboro, respectively. Specifically, it alleges that the dealership represented to plaintiff on June 29, 2020, "prior to the sale," that "the vehicle he was getting from FCA and Westboro would be brand new." (SAC ¶¶ 35, 45). It alleges that FCA and Westboro "knew, or through a modicum of diligence could have discovered, that [their] representations about the vehicle's condition were false," that the representations were made "with the intent to induce the Plaintiff into purchasing the vehicle," and that he would not have done so had he known that the vehicle "would arrive used and damaged" and that defendants

7

"would then try to covertly cover up" the fact that the vehicle had been damaged. (*Id*. ¶¶ 36-40, 46-50).[5]

The complaint specifically alleges that Westboro, not FCA, made the representations to plaintiff in June 2020 that he was buying a car that would arrive new and undamaged. It attributes Westboro's representations to FCA by alleging in a conclusory fashion that Westboro was an "authorized agent" of FCA. No other facts are alleged that establish an agency relationship between Westboro and FCA.

When a purported agency relationship is integral to an allegation of fraud, such that both rely upon the same facts, the agency relationship should be evaluated under the heightened standard of Fed. R. Civ. P. 9(b). *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."); *see Archdiocese of San Salvador v. FM Int'l, LLC*, 2006 WL 437493, at *8-9 (D.N.H. 2006) (analyzing allegations of principal-agent relationship according to heightened standard of Fed. R. Civ. P. 9(b)); *cf. Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363 (table), 2000 WL 1154423, at *3 (8th Cir. Aug. 16, 2000) (assuming, without deciding, that Rule 9(b) applied to the pleading of agency relationship). *But see Holloway v. Oxygen Media, LLC*, 361 F. Supp. 3d 1213, 1222-23 (N.D. Ala. 2019) (applying Fed. R. Civ. P. 9(b) standard to alleged fraudulent statement made by agents but analyzing under Fed. R. Civ. P. 12(b)(6) standard whether agent-

---

[5] Counts 1 and 2 thus allege that the misrepresentation occurred in June 2020 as to future events (that the vehicle would, in the future, arrive used and damaged, and defendants would try to cover up that fact) as opposed to occurring in September or October 2020 as to a then-existing condition (that the car had been used and damaged prior to delivery).

principal relationship allowed for attribution of statement to principal).

Here, the complaint offers only the conclusory assertion that Westboro was an "authorized agent" of FCA. That, without more, is insufficient to meet the heightened standard of Fed. R. Civ. P. 9(b). *See Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) ("[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)."), *aff'd*, 152 F.3d 918 (2nd Cir. 1998) (summary order).

Furthermore, and in any event, the complaint fails to allege facts sufficient to allege an agency relationship even in the absence of a heightened pleading standard. Dealerships are not automatically considered agents of automobile manufacturers, despite the use of terms such as "authorized dealership." *See Acevedo v. DMAX Ltd.*, 2015 WL 12696176, at *28 (C.D. Cal. Nov. 13, 2015) (holding that "authorized independent dealerships" were not agents of General Motors despite allegedly identical branding of dealerships and the training support General Motors provided to dealerships to ensure "standardized brand experience"); *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *6-7 (C.D. Cal. Oct. 3, 2014) (holding that statements of authorized dealership concerning repairs made to vehicle could not be attributed to manufacturer under agency theory); *Theo & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 746 (2000) (holding that use of manufacturer's logo on dealer's signs and invoices did not create genuine issue of material fact as to whether dealer acted with apparent authority); *Malmberg v. American Honda Motor Co., Inc.*, 644 So.2d 888, 891 (Ala. 1994) (holding that evidence of Honda logos displayed on signs, literature, products, brochures, and dealership itself was alone insufficient to establish agency relationship).[6] At a minimum, something more is required. And here, as noted,

---

[6] Under certain circumstances, an agency relationship may be inferred between a dealership and manufacturer, but such an inference depends on the specific facts demonstrating such a relationship. *See Baranco v.*

9

the complaint alleges nothing beyond the bare legal conclusion of an agency relationship.[7]

Even if the Court were to assume that the complaint establishes an agency relationship between FCA and Westboro, the fraud by inducement theory still fails. Rule 9(b) requires "not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." *North Am. Catholic Educ. Programming Found., Inc.*, 567 F.3d at 13. Thus, general allegations that the defendant had knowledge of a materially false statement are inadequate, "unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Id.* (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992)).

Here, the facts alleged are insufficient to create an inference that FCA knew that the alleged statement was false—in particular, that it knew in advance that the vehicle would be delivered in a used and damaged condition. According to the complaint, plaintiff completed the purchase order with Westboro, which ostensibly then submitted the order to FCA for manufacture. That arrangement can be inferred from the fact that plaintiff ordered a vehicle and the caveat on the purchase order that Westboro would return plaintiff's deposit if the vehicle

---

*Ford Motor Co.*, 294 F. Supp. 3d 950, 975 (N.D. Cal. 2018) (holding that evidence that Ford had issued repair instructions to dealerships and required dealers to submit data regarding repairs supported plausible inference that dealership acted as agent of manufacturer); *O'Neil v. DaimlerChrysler Corp.*, 538 F. Supp. 2d 304, 315 (D. Mass. 2008) (finding that testimony of manufacturer's customer relationship manager stating that manufacturer used dealerships to interact with customers supported inference that dealership was agent of manufacturer for purposes of selling service contracts and performing warranty work). Here, however, no such specific facts are alleged concerning the relationship between FCA and Westboro.

[7] Under Massachusetts law, "[a]n agency relationship is created when there is mutual consent, express or implied, that the agent is authorized to act on behalf and for the benefit of the principal, subject to the principal's control." *Theos & Sons, Inc.*, 431 Mass. at 742. The principle is held liable for "the agent's acts toward third parties only if the agent was acting with the actual or apparent authority of the principal in that transaction." *Id*. at 743. Apparent authority arises only "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Smith v. Jenkins*, 718 F. Supp. 2d 155, 165 (D. Mass. 2010). The conduct of the principal, not the agent, creates apparent authority. *Sheinkopf v. Stone*, 927 F.2d 1259, 1269 (1st Cir. 1991).

could not be built as he desired. (SAC Ex. A). But there are no alleged facts from which it may be reasonably inferred that FCA intentionally induced plaintiff to buy a car by making false statements. Nor are there facts that suggest that FCA intended, at the time of purchase, to sell plaintiff a damaged, somewhat used vehicle instead of a new one with ten or fewer miles on the odometer. Failure to make good on an earlier promise, without more, does not raise an inference of scienter. *See North Am. Catholic Educ. Programming Found., Inc.*, 567 F.3d at 13 ("The complaint says that Goldman Sachs never intended to follow its business plan but the assertion is not itself supported by particulars that suggest scienter . . . ; no particulars are pleaded which would suggest the elements of fraud in the inducement.").

In short, the complaint fails to allege facts with sufficient particularity to sustain a theory of fraud by inducement as to Count 1.

### 2. Fraud by Omission

Count 4 alleges unfair and deceptive practices in trade or commerce in violation of Mass. Gen. Laws ch. 93A. A chapter 93A claim that involves fraud is subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b). *Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010); *see Mulder v. Kohl's Dept. Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017). Here, Count 4 specifically alleges that the vehicle was "damaged in the [FCA's] possession prior to delivery to the Plaintiff;" that "[FCA] then attempted to cover up those damages" by repairing them in "a shoddy manner in the hopes that this damage would go unnoticed;" and that FCA failed "to disclose that the vehicle was damaged, had been in an accident, and that [FCA] had attempted to repair those damages." (SAC ¶¶ 63-64, 66).

Counts 9 and 10 allege a theory of common-law fraud by omission against FCA and Westboro, respectively. Count 9 specifically alleges that "FCA knew, at the time it delivered the vehicle to Westboro for ultimate delivery to Plaintiff, that the vehicle had been used and

damaged," and that "FCA nevertheless consciously chose not to say anything about this to the Plaintiff, instead hoping that the Plaintiff would not realize that his brand new custom vehicle had been damaged and used." (*Id*. ¶¶ 107-08). It further alleges that FCA "knew, or through a modicum of diligence could have discovered, that its representations about the vehicle's condition were false," that "[FCA's] misrepresentations and omissions about the vehicle's safety and condition were made with the intent to induce the Plaintiff into purchasing the vehicle," and that "the Plaintiff was reasonably induced to [complete] the vehicle purchase by [FCA's] misrepresentations." (*Id*. ¶¶ 109-11).

Both Counts 4 and 9 thus allege that FCA knew at the time of delivery that the vehicle was damaged and used and deliberately withheld that information so that the sale would be completed. Those allegations do not depend upon the existence of an agency relationship to sustain a claim of fraud; it may be reasonably inferred that FCA was aware that the vehicle it had specially manufactured would be delivered to a particular customer at a particular dealer. And the existence of hidden damage, at a minimum, would be material to a reasonable customer. Although the allegations do not identify specific locations or dates, that is not fatal to the claim; Rule 9(b) does not obligate a party to "allege every conceivable detail incident to the fraud." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020). That principle is especially applicable in circumstances where the "facts missing from the complaint are in the exclusive possession" of other parties. *Id.* at 51.

In short, Counts 4 and 9 allege with particularity that FCA knew that the vehicle plaintiff ordered had been used and was damaged in an accident, and that it failed to disclose that fact. Under the circumstances, that is sufficient to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). The motion to dismiss will therefore be denied as to Counts 4 and 9 to the

extent that FCA contends that the complaint fails to plead fraud with particularity.

### 3. Lack of Privity

#### a. Mass. Gen. Laws ch. 231, § 85J

FCA further contends that Count 1 fails to allege a plausible claim under Mass. Gen. Laws ch. 231, § 85J because it does not allege facts that establish a "purchaser-seller" relationship between plaintiff and FCA.

Mass. Gen. Laws ch. 231, § 85J provides that "[w]hoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him." Thus, the statute "creates a cause of action for a purchaser of personal property against the seller of that property." *Margaret Hall Found. v. Atlantic Fin. Mgmt., Inc.*, 572 F.Supp. 1475, 1483 (D. Mass. 1983). However, "[t]o state a claim for fraud under § 85J, the plaintiff must be in privity with the seller." *King v. Collagen Corp.*, 983 F.2d 1130, 1136 (1st Cir. 1993).

Here, there are no alleged facts establishing privity between plaintiff and FCA. The purchase agreement memorializes a sale between plaintiff and Westboro, and the complaint does not allege any other facts from which to infer that plaintiff purchased the vehicle from FCA.

Plaintiff again contends that the sale of the vehicle can be ascribed to FCA because Westboro acted as an "authorized agent" of FCA. It is that allegation, according to plaintiff, that distinguishes this case from *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706 (1991). There, the plaintiff bought a vehicle from Avis Rent-a-Car; the car thereafter caught fire and was destroyed due to an alleged manufacturing defect in its electrical system. *Id.* at 707. The plaintiff then sued the manufacturer, General Motors, alleging a violation of § 85J, among other claims. *Id.* The Supreme Judicial Court held that dismissal of the § 85J claim was proper because the complaint alleged that the vehicle was purchased from Avis, not General Motors, and therefore the complaint failed to establish the required purchaser-seller relationship. *Id.* at 708. Plaintiff contends that, in contrast,

the complaint here alleges an agency relationship, which establishes a purchaser-seller relationship with the manufacturer.

It is by no means clear whether the privity requirement of § 85J can be circumvented by an allegation of an agency relationship. Nevertheless, as set forth above, the complaint alleges no facts from which an agency relationship can be inferred. Accordingly, the complaint fails to plausibly establish the purchaser-seller relationship necessary to maintain a claim against FCA under § 85J.

The motion to dismiss will therefore be granted as to Count 1 for failure to plead fraud with particularity and lack of privity.

### b.     Mass. Gen. Laws ch. 93A

FCA has also moved to dismiss the chapter 93A claim for lack of privity. Unlike a claim under Mass. Gen. Laws ch. 231, § 85J, contractual privity is not required to state a claim under chapter 93A. *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017). To be sure, some "business, commercial, or transactional" relationship is required, because chapter 93A prohibits unfair and deceptive practices that occur within the course of business. *Id.* But FCA has not moved to dismiss on the ground that the complaint failed to allege a commercial relationship. In fact, FCA makes no argument at all concerning the chapter 93A claim that is not duplicative of the § 85J claim. In any event, lack of privity is not a basis to dismiss the chapter 93A claim. Whether there is another basis to dismiss that claim, pursuant to Fed. R. Civ. P. 12(b)(6), is not before the Court.

Accordingly, the motion to dismiss will be denied as to Count 4.

### B.     Negligent Misrepresentation

Count 6 is mistitled in the complaint as "negligence." In substance, however, it is a claim for negligent misrepresentation, because it alleges that FCA damaged the vehicle during its

manufacture or delivery and then neglected to inform plaintiff of the damage.  (SAC ¶¶ 81-88). FCA has moved to dismiss Count 6 on the ground that it is barred by the economic-loss doctrine.

"In contrast to claims for negligence, where physical harm must be established, an exception to the economic loss doctrine . . . permits recovery for financial harm resulting from negligent misrepresentation."  *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 472 n.22 (2009).  Therefore, the economic-loss doctrine does not bar the negligent misrepresentation claim here.  Again, whether there is another basis to dismiss that claim is not before the Court.

Accordingly, the motion to dismiss will be denied as to Count 6.

### IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED as to Count 1, and otherwise denied.

**So Ordered.**

Dated:  February 17, 2022

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Chief Judge, United States District Court