UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN BEREZIN,  )<br>  )<br>      Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>FCA US, LLC, and SH AUTO, INC., d/b/a  )<br>WESTBORO CHRYSLER DODGE JEEP,  )<br>  )<br>      Defendants.  )<br>  ) | Civil Action No.<br>21-10852-FDS |

**MEMORANDUM AND ORDER ON
DEFENDANT FCA'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, C.J.**

This is a dispute arising from the purchase of an automobile.  In June 2020, plaintiff Ivan Berezin ordered a Jeep Grand Cherokee at defendant SH Auto, Inc., d/b/a Westboro Chrysler Dodge Jeep, a dealership in Westboro, Massachusetts.  Berezin ordered his vehicle directly from the manufacturer, FCA US, LLC, in Auburn Hills, Michigan, by completing an order form at the Westboro dealership.  When Berezin received the vehicle, it allegedly bore signs of having been driven and damaged.  He sued FCA and Westboro, alleging common-law fraud, violations of Chapter 93A, and negligent misrepresentation.  FCA has now moved for summary judgment on the remaining claims against it.  For the following reasons, that motion will be denied.

**I.      Background**

The facts below are undisputed unless otherwise noted.

      **A.      Factual Background**

Ivan Berezin is a resident of Framingham, Massachusetts.  (Am. Compl. ¶ 6).

SH Auto, Inc., is a licensed car dealership in Westboro, Massachusetts, which does business under the name Westboro Chrysler Dodge Jeep.  (*Id.* ¶ 8).

At the relevant time, FCA US, LLC, was the North American arm of Fiat Chrysler Automobiles N.V.  (*Id.* ¶ 7).  FCA manufactured vehicles under the Jeep brand.  (*Id.*).

In June 2020, Berezin purchased a 2020 Jeep Grand Cherokee Trailhawk (or Trackhawk) from Westboro.  (Def. Statement of Undisputed Material Facts ("SOF") ¶ 1).[1]  The purchase contract noted that the purchase was a "factory order" and carried an express warranty.  (Compl. Ex. A, "Motor Vehicle Purchase Contract").  The vehicle arrived with FCA's written warranty (SOF ¶ 3), which included, among other things, coverage for "all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."  (Lessard Aff. Ex. B at 5, ECF No. 51).  That warranty disclaimed any coverage, however, for damage caused by "environmental factors," such as "conditions resulting from anything impacting the vehicle," including "cracks and chips in glass, scratches and chips in painted surfaces, or damage from collision."  (*Id.* at 13).

The vehicle arrived at the Westboro lot on October 15, 2020.  (SOF ¶ 7).  When Berezin first examined the car, he noticed that the odometer showed that it had been driven 32 miles.  (SOF ¶ 4).  He did not see any issues with the vehicle's paintwork.  (*Id.* ¶ 5).  Despite the odometer reading, however, he took delivery of the car and drove it home.  (SOF ¶ 6-7).  According to Berezin, the car was covered in a protective film when he took possession of it.  (Pl. Response to SOF at 7, ECF No. 56-1).

Several days later, Berezin brought his new vehicle to a third-party company, AVI LLC,

---

[1] Although the complaint alleges that the vehicle was a "Trailhawk" model, the purchase agreement indicates that it was a "Trackhawk."  The difference is not material to the present dispute.

to apply a paint-protective coating. (*Id.* ¶ 8). He contends that AVI discovered several defects in the vehicle, including "missing paint, paint drips, overspray, misaligned body panels and burn marks." (Pl. Response to SOF at 2).

### B. Procedural Background

In January 2021, Berezin sued Westboro and FCA in state court, alleging fraud, negligent misrepresentation, breach of contract, and violations of state consumer protection law. He then amended the complaint to include a federal cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* Shortly after that, defendants removed the action to federal court and Berezin filed a second amended complaint.

The amended complaint alleged ten claims against both FCA and Westboro. As relevant to FCA, Count 1 alleged fraud in the sale of goods, Count 4 alleged violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, Count 6 alleged negligent misrepresentation,[2] and Count 9 alleged common-law fraud. FCA moved to dismiss those claims for failure to state a claim upon which relief could be granted. The Court granted that motion as to Count 1 but denied it as to the other counts. FCA has now moved for summary judgment on the remaining claims.

## II. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine

---

[2] Counts 6 and 7 are titled "negligence" but the claims allege, in substance, negligent misrepresentation.

3

issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but must "present affirmative evidence." *Id.* at 256-57.

### III. Analysis

FCA has moved for summary judgment on the ground that Berezin has produced no evidence to create a triable issue of fact that the Jeep was damaged at the time of delivery. According to FCA, if that contention is correct, summary judgment would be warranted on all remaining claims against it. Alternatively, it asserts that summary judgment is justified as to the negligent misrepresentation claim (because it had no legal duty to Berezin) and the fraud claim (because it was not a party to the transaction between Westboro and Berezin). In its reply memorandum, FCA further contends that even if there were damage to the vehicle, there is no evidence that it knew of that damage and deceived Berezin by withholding it from him.

#### A. Evidence of Damage or Defects

To prevail on his remaining claims against FCA, Berezin must be able to demonstrate that the Jeep was damaged at the time of its delivery; that is the material fact he alleges was fraudulently withheld from him. FCA contends that there is no evidence that any such damage existed. In support of that position, it has offered the expert testimony of Ray Lessard, a

technician, who testified that he found no damage to the vehicle.  According to FCA, Berezin's failure to introduce responsive expert testimony is fatal to his claim.  Berezin has provided the invoice from AVI that lists several defects apparently discovered during its vehicle inspection; and also asserts that the lay testimony adduced during deposition is enough to create a triable issue of fact as to whether the Jeep was damaged on delivery.

### 1. AVI's Invoice

Berezin has submitted a three-page invoice purporting to be from AVI that reports several apparent flaws it found in the vehicle.  The invoice is unsigned and attached to a declaration of Berezin's counsel that asserts that it "is a true and accurate copy of the transcript of the repair invoice that the Plaintiff received from AVI, LLC, reflecting the damage to the Plaintiff's vehicle." (Zelman Decl. at 1, ECF No. 56-2).  Berezin offers the invoice as evidence that the vehicle was damaged before it arrived at AVI.  (Pl. Response to SOF at 3).

"Documents supporting or opposing summary judgment must be properly authenticated." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (citing FED. R. CIV. P. 56(e)).  Typically, authentication requires competent testimony, such as an affidavit that meets the requirements of Fed. R. Civ. P. 56(e), concerning the document.  *See id.* ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." (quoting *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)) (quotation omitted)); *see also* FED. R. EVID. 901(b)(1).  Certain categories of documents are self-authenticating and require no extrinsic testimony.  *See* FED. R. EVID. 902.  "The authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be." *DiMaria v. Concorde Entm't, Inc.*, 2014 WL 991567, at *3 (D. Mass. Mar. 12, 2014) (citing *Goguen ex rel. Est. of Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16-17 (D. Mass. 2006)).

Here, although the invoice appears to be genuine, its appearance alone is not enough to authenticate it. Plaintiff's counsel has not declared any personal knowledge of either the invoice's origin or its receipt sufficient to allow him to competently testify to its authenticity. *See Alvarez v. City of Worcester*, 605 F. Supp. 3d 304, 310 n.2 (D. Mass. 2022) (declining to consider unauthenticated photographs based only on counsel's declaration). It is also not self-authenticating under Fed. R. Evid. 902 because it does not fall into any of the categories of documents permitted under that rule. Therefore, because the invoice has not been authenticated, the Court will not consider it as part of the summary judgment record.

### 2. Expert Testimony

"Expert testimony is required when 'the answers to the highly technical and specialized questions raised by such claims lie outside the knowledge of most lay jurors.'" *Adelman v. Am. Honda Motor Co.*, 2013 WL 6009259, at *3 (D. Mass. Nov. 7, 2013) (quoting *Morse v. Ford Motor Co.*, 2010 WL 2773527, at *1 (D. Mass. July 13, 2010)); *see also Kourouvacilis v. Gen. Motors Corp.*, 410 Mass. 706, 717 (1991) (finding expert testimony required to show that a six-year-old vehicle was defective when purchased, and that defect caused a fire). That said, experts are not required if jurors can rely on their common knowledge to understand the facts in dispute. *See Gliottone v. Ford Motor Co.*, 95 Mass. App. Ct. 704, 708-10 (2019) (finding no expert testimony required to allege a manufacturing defect after a plaintiff bought a newer car that began to stall and lose power three weeks after sale); *Smith v. Ariens Co.*, 375 Mass. 620, 625 (1978) (determining that jurors could rely on their everyday experience to decide whether a snowmobile was negligently designed); *Coyne v. John S. Tilley Co.*, 368 Mass. 230, 331 (1975) ("[A] trier of fact could infer as [a] matter of common knowledge that a relatively new aluminum stepladder would not collapse in such a way that one of its legs was bent inward . . . unless someone had been negligent."). Determining whether an expert is required, therefore, is a

factual inquiry that examines the nature and circumstances of the alleged defects. *See Cameron v. FCA US LLC*, 2022 WL 619519, at *2 (Mass. App. Ct. 2022).

Berezin alleges that the vehicle he received had defects, including "missing paint, paint drips, overspray, misaligned body panels and burn marks . . . ." (Pl. Response to SOF ¶ 15). Those alleged defects are straightforward and observable conditions that fall within an average juror's everyday experience. As the cases cited by FCA confirm, the need for expert testimony depends on the complexity and technical nature of the subject matter. Here, the alleged defects do not concern mechanical systems or hidden manufacturing flaws that would be beyond the knowledge of a layperson. Assessing such plainly observable issues as paint quality and panel alignment is well within the realm of everyday experience and does not require specialized expertise. *See Morse*, 2010 WL 2773527, at *1-2. Because lay testimony is sufficient to explain the alleged vehicle defects, Berezin was not required to produce an expert for his claims to survive summary judgment.

### 3. Deposition Testimony

Instead of expert testimony, Berezin relies on his own deposition and that of Westboro's general manager, Thomas Sullivan.

In his deposition, Berezin asserted that the vehicle was wrapped in a protective film when he took delivery, and he did not inspect the car's exterior any further. (Berezin Dep. at 23, 27). He also said the protective film was not removed until AVI inspected the vehicle several days later, at which point the alleged defects were discovered. (*Id.* at 31). He testified that he had personally seen the damage AVI reported. (*Id.* at 40). Although he did not discuss specific damage other than paint issues, he did state that "[t]he entire exterior of the car has clear damage visible every day." (*Id.* at 48). In addition to that testimony, Thomas Sullivan, the general manager of Westboro, denied seeing any problems with the vehicle when FCA delivered it. But

7

he acknowledged, when asked about the state of the car when Berezin returned it, that he had seen "a couple . . . paint drips . . . on one of the corner panels." (Sullivan Dep. at 39).

Berezin's testimony is, of course, self-serving, and Sullivan's testimony supports his allegations only in part. That testimony is nonetheless evidence, and this Court cannot consider its credibility. *See Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017). If Berezin's testimony that a protective film covered the vehicle is credited, it may be reasonably inferred that any damage before the film was applied while in FCA's control. Similarly, at least some of the alleged defects (such as paintwork or panel alignment) could implicate FCA's workmanship, rather than the "environmental factors" excluded from its limited warranty. (Lessard Aff. Ex. B at 5). In some cases, if a car remained at a dealership for an extended period and outside out of a manufacturer's control, that inference might not be supportable. But Sullivan testified that the vehicle arrived with an odometer showing it had been driven for 32 miles—which he could not account for—and was on Westboro's lot for only 22 minutes before being removed by Berezin. (Sullivan Dep. at 19, 33). It is a reasonable inference that any of the alleged damage occurred while the vehicle was with FCA. Drawing all reasonable inferences in Berezin's favor, he has carried his burden to show a triable issue of material fact to survive summary judgment.

### B.   Negligent Misrepresentation Claim

FCA further contends that even if there is a triable issue on the vehicle's condition at delivery, Berezin must still show evidence that it owed a legal duty to him. But FCA acknowledges that its warranty creates a legal duty, which would be relieved only by a lack of evidence of covered damage or defects. (Def. Reply at 6-7). Because there is a factual dispute over whether defects existed, however, summary judgment will not be granted.

### C. Fraud Claim

#### 1. Party to the Transaction

FCA also asserts that summary judgment is justified as to the fraud claim because it was not a party to the transaction between Berezin and Westboro, and Berezin did not communicate directly with FCA before taking delivery of the Jeep. At the same time, as the Court already determined at the motion-to-dismiss stage, none of Berezin's allegations depend on an agency relationship. It may reasonably be inferred that FCA knew the specially manufactured Jeep would be delivered to a certain customer at a certain dealership. (ECF No. 22 at 11-12). FCA has offered no rationale to rebut that reasonable inference in Berezin's favor.

#### 2. Knowledge of Defects

In its reply memorandum, FCA asserts for the first time that even if there were damage to the vehicle, there is insufficient evidence that FCA knew of that damage, and therefore Berezin cannot show an intentional misrepresentation or omission. But "a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum." *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (citing *Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999)). Instead, it is "limited to rebuttal of factual and legal arguments raised in the opposition." *Rivera Concepcion v. Puerto Rico*, 682 F. Supp. 2d 164, 169 n.5 (D.P.R. 2010) (citing *Wills*, 184 F.3d at 27; *United States v. Brennan*, 994 F.2d 918, 922 n.7 (1st Cir. 1993)). Where, as here, a moving party raises an argument for the first time in a reply, that argument is waived. *See EnergyNorth Nat. Gas v. Century Indem. Co.*, 2007 WL 776124, at *1 n.4 (D.N.H. Mar. 15, 2007).

Even were the Court to consider FCA's contention, however, it would be unlikely to succeed. Under Massachusetts law, a "misrepresentation may occur without the speaker's knowledge that the statement is false if the truth is reasonably susceptible of actual knowledge,

9

or otherwise expressed, if, through a modicum of diligence, accurate facts are available to the speaker." *Acushnet Fed. Credit Union v. Roderick*, 26 Mass. App. Ct. 604, 604 (1988). In other words, a plaintiff must only show "that the misrepresentation of defendant's statement could have been discovered by the defendant if the defendant had exercised diligence." *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 144 (D. Mass. 1999). Here, FCA made a representation about the condition of the vehicle it delivered to Berezin. If that vehicle was defective, as Berezin alleges, that condition was readily ascertainable by FCA had it exercised diligence, considering its manufacture and control of the car. Because there is a triable issue of fact over whether the vehicle was defective, FCA's knowledge of that defect is also disputed, and therefore summary judgment will not be granted on that ground.

## IV.     Conclusion

For the foregoing reasons, defendant FCA US, LLC's motion for summary judgment is DENIED.

**So Ordered.**

Dated: November 30, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court